J-S03044-24

2024 PA Super 92

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
FAUSLET ALCEUS   :
  :
Appellant   :   No. 534 MDA 2023

Appeal from the PCRA Order Entered March 22, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005177-2017

BEFORE: OLSON, J., NICHOLS, J., and BECK, J.

OPINION BY BECK, J.:                  **FILED: MAY 8, 2024**

Fauslet Alceus ("Alceus") appeals from the order entered by the Dauphin County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA")[1] after an evidentiary hearing. Alceus claims that trial counsel was ineffective for failing to investigate or call character witnesses in support of his defense. Upon review, we apply longstanding precedent to conclude that trial counsel provided ineffective assistance by failing to investigate or call character witnesses in support of Alceus' defense because (1) there were only two direct witnesses providing conflicting accounts of what occurred (the classic "he said/she said" case); (2) character evidence would have bolstered counsel's strategy of establishing the alleged victim was lying; and (3) Alceus was prejudiced by trial counsel's

---

[1] 42 Pa.C.S. §§ 9541-9546.

omissions. We therefore reverse the order of the PCRA court and remand for proceedings consistent with this decision.

In a prior decision, this Court summarized the facts underlying Alceus' convictions as follows:

> On the night of September 8, 2017[,] and into the early morning of September 9, 2017, Angelica Fernandez Rodriguez [("Rodriguez")] was staying at her mother's home in Harrisburg with her five children. Rodriguez, also five months pregnant, was planning on leaving her husband, [Alceus]. While sleeping in the early morning of September 9, 2017, Rodriguez was awoken by [Alceus] physically beating her. [Alceus] was able to gain access to the apartment building because the entrance to the apartment building was broken at the time. Rodriguez's 8-year-old son opened the apartment door for [Alceus] after he knocked. [Alceus] was screaming at her while the children watched him physically punch her body with closed fists. At one point, [Alceus] put both hands around her neck. Rodriguez attempted to get her crying [] twins, [who were about thirteen months old,] but ended up falling with them due to what she believed to be a broken leg. Rodriguez attempted to leave the situation[;] however[,] she had a hurt leg and was holding one twin in each arm. While [Rodriguez was] sitting against a wall with her twins, [Alceus] used both hands around her neck until Rodriguez had difficulty breathing, became lightheaded, and had blurred vision. Rodriguez was not able to get to a cell phone to call for help because it was broken during the fight. [Alceus], knowing that [Rodriguez] was pregnant, continued to kick her along her stomach area.
>
> Still angry, [Alceus] left Rodriguez'[s] mother's home as the sun came up. [Rodriguez's mother] came home later in the day and took Rodriguez and her children to Harrisburg Hospital.
>
> On September 9, 2017, Officer Matthew Gallup was … dispatched to Harrisburg Hospital for a report of an assault [and was then] directed to Rodriguez'[s] hospital room. Rodriguez indicated that she had been assaulted. Officer Gallup observed physical injuries on her face, including a swollen right eye, redness down her cheek, and scratches on her left eye, cheek area, and neck. She also complained of knee and side pain. [Rodriguez] also indicated to Officer Gallup that she had been kicked or

assaulted in her stomach area. [She] completed a domestic violence statement form[, as well as] a strangulation questionnaire. [Both forms were] in the victim's own handwriting and in [her] own words. Rodriguez told Officer Gallup that [Alceus] was the one who assaulted her and her children.

Officer Gallup observed Rodriguez'[s] twins at the hospital. The male twin had a large lump on his forehead with an abrasion as well as a cut on the other side of his face and on his eyebrow. The female twin had a small cut or laceration on the top of her head towards the back of her head and side of her hair. [A] forensics officer[] came to the [hospital] to take photos of the twins and Rodriguez in the presence of Officer Gallup.

\* \* \*

… [N]urse Faith Dreibelbis was working as a triage nurse [when Rodriguez and her children arrived] at the hospital at approximately 6:45 in the evening [on September 9, 2017.] Rodriguez told [Nurse] Dreibelbis that she had been assaulted. Rodriguez received an X-ray of her knee[ and] her spine, as well as an ultrasound. [Nurse] Dreibelbis observed a laceration above the eyebrow and alon[g] the right hairline of the male twin, and a laceration on the scalp of the female twin. [Nurse] Dreibelbis also observed redness and scratches along the male twin's back that were not depicted in photographs.

[Nurse] Dreibelbis contacted [the] YWCA upon request of Rodriguez and a representative came to be with her when she was in the emergency department. She also contacted Harrisburg Police Department, which is typical practice when patients report that they have been assaulted. [Rodriguez] was discharged from the hospital around 1:00 a.m. on September 10, 2017. The children were discharged at 10:46 p.m. on September 9, 2017.

***Commonwealth v. Alceus***, 623 MDA 2020, 2021 WL 37460 at \*1-2 (Pa. Super. Jan. 5, 2021) (non-precedential decision) (citation omitted; ellipses and some brackets in original).

Police subsequently arrested Alceus and the Commonwealth charged him with aggravated assault; aggravated assault of a victim less than 6 and defendant 18 or older (two counts); aggravated assault of an unborn child; strangulation – applying pressure to throat or neck; endangering the welfare of a child (two counts); and corruption of minors.[2] The matter proceeded to a jury trial in October 2019. The Commonwealth presented the testimony of Rodriguez, Officer Gallup and Nurse Dreibelbis; the medical records of Rodriguez and the twins documenting their injuries; Rodriguez's statements at the hospital; and photographs of their injuries. Alceus testified in his own defense, which this Court previously summarized:

> [Alceus] … denied he committed the assault on Rodriguez and the twins. He claimed he was not at Rodriguez's mother's apartment on the night of the incident, and that his relationship with Rodriquez had ended in early July 2017. [Alceus] claimed that on the evening of September 8, 2017, he was at the Hollywood Casino with a friend[, Paulin Thiombiano ("Thiombiano"),] until midnight. They then returned to [Thiombiano's] apartment, where he had been staying.[fn] [Alceus] testified they talked for "a couple hours," and went to sleep around 2:00 a.m. on September 9th. He claimed that Rodriguez's mother called him around 2:00 p.m. that afternoon, which was the first time he learned of the allegations. [Alceus] denied ever harming Rodriguez or their children, and testified he had last seen Rodriguez on September 2, 2017.
>
> > [fn] [Alceus] also stated his car was "broken" at the time, so [Thiombiano] drove them to the casino and back home. N.T., 10/21/[20]19, at 128-29.

---

[2]   18 Pa.C.S. §§ 2702(a)(1), (8), 2606(a), 2718(a)(1), 4304(a)(1), 6301(a)(1)(i).

- 4 -

***Alceus***, 623 MDA 2020, 2021 WL 37460 at *2 (record citations omitted; footnote in original). After Alceus' testimony, the jury was shown a video of a Child Resource Center ("CRC") interview with one of Rodriguez's minor children, T.R., who was present at the time of the incident. ***Id.*** (citing N.T., 10/21/2019, at 141).

Following trial, a jury convicted Alceus of all charges. On January 29, 2020, the trial court sentenced Alceus to an aggregate term of seven to fourteen years of incarceration, followed by six years of probation. This Court affirmed his judgment of sentence and on June 28, 2021, our Supreme Court denied his petition for allowance of appeal. ***See Alceus***, 623 MDA 2020, 2021 WL 37460, *appeal denied*, 257 A.3d 1212 (Pa. 2021).

On August 15, 2022, Alceus timely filed a counseled PCRA petition, his first. After the Commonwealth filed a response to the petition, Alceus filed an amended PCRA petition. Alceus contended that he was entitled to relief because trial counsel was ineffective in failing to call an alibi witness and failing to discuss, investigate, or call any character witnesses in Alceus' defense.

The PCRA court held an evidentiary hearing on January 17, 2023, at which the court heard testimony from trial counsel, Alceus, and several character witnesses for Alceus. Wesley Laroque ("Laroque") testified that he had known Alceus for many years, dating back to when the two were younger and living in Haiti. N.T., 1/17/2023, at 12-13. He stated he was willing to testify at Alceus' trial and would have testified that Alceus has a good

- 5 -

reputation for being peaceful in the small community of Haitians living near Central Dauphin High School. *Id.* at 14-15.

Thiombiano, who stated he was also willing and available to testify at Alceus' trial, testified that he had known Alceus for seven years and met him while working at a warehouse. *Id.* at 18. He likewise would have testified to Alceus' good reputation in the Harrisburg Haitian community for being peaceful. *Id.* at 29-30. Thiombiano further testified in support of Alceus' alibi, stating that he was with Alceus the night Rodriguez was injured. *Id.* at 24, 31.

Alceus was prepared to present the testimony of a third potential character witness, Jean Coulange ("Coulange"). Because of time constraints, however, the parties stipulated that Coulange would have provided the same character-related testimony as the prior two witnesses—that Alceus had a good reputation in the community for peacefulness and that he would have been willing and available to testify at trial. *Id.* at 37.

Alceus also testified at the PCRA hearing. He stated that he asked trial counsel to call Thiombiano as a witness and that he was surprised when Thiombiano was never called to testify. *Id.* at 38. Trial counsel confirmed this in his testimony at the PCRA hearing and stated that he interviewed Thiombiano as a potential alibi witness. *Id.* at 6. Referring to notes he had prepared contemporaneously with his interview of Thiombiano, trial counsel stated that Thiombiano did not remember being with Alceus the night of the

incident; instead, Thiombiano told trial counsel he was with Alceus the following afternoon and night.[3] *Id.* at 6-7, 41. Trial counsel also testified, based on his conversation with Thiombiano, that even if he was with Alceus that night, the assault on Rodriguez occurred after the time Thiombiano indicated he had gone to bed. *Id.* at 41. In addition, Thiombiano told trial counsel during their pretrial interview that Alceus sometimes took his keys and used his car. *Id.* Trial counsel testified that he decided not to call Thiombiano as an alibi witness because "the risk was too high that he could have gotten confused with the dates on the stand" and the jury would hear that Thiombiano was not actually with Alceus during the time of the assault, contradicting Alceus' alibi testimony. *Id.* at 42; *see also id.* at 7.

Trial counsel admitted, however, that he never discussed the potential to call character witnesses with Alceus:

BY [PCRA COUNSEL]:

**Q.** … Did you discuss with [Alceus] the issue of character witnesses?

**A.** We did not discuss character witnesses. I know he had indicated that the victim was a liar several times. He had told me – that came to me from him, [Thiombiano], and then Junior who I believe is a cousin. But character witnesses for him, no, we did not discuss that.

_____

[3] Trial counsel also investigated Alceus' claim he had been at the casino with Thiombiano on the night of the assault. N.T., 1/17/2023, at 40. Alceus' casino player card was not used that night and the casino could not provide trial counsel with any information to indicate Alceus had been there at that time. *Id.* Trial counsel also tried unsuccessfully to obtain Alceus' cellular phone records to show his location on the night of the incident. *Id.* at 40-41.

THE COURT:        Character witnesses for what?

THE WITNESS:    For [Alceus] we did not discuss.

BY [PCRA COUNSEL]:

**Q.**    So you said you did not discuss.  Fair to say you did not know whether he had character witnesses for being peaceful?

**A.**    I wouldn't know either way.

*Id.* at 8.

Trial counsel explained that his strategy was to show that Rodriguez was not telling the truth.  *Id.* at 4-5.  He did not discuss character witnesses with Alceus because he wanted to focus "on the child being the only one that didn't have a reason to lie" and "the lack of investigation by the police"; he didn't want to "confuse the jury" by calling character witnesses.  *Id.* at 8.  He therefore relied on the video evidence of the CRC interview with T.R., who was present the night of the incident, as the child did not "make any disclosures about the violence" in the video, and highlighted the lack of police investigation at the scene of the assault despite Rodriguez's statements that Alceus had inflicted damage to the inside of the residence.  *Id.* at 4, 8.  Trial counsel was aware of the contentious relationship between Rodriguez and Alceus and decided that T.R. was the only person who did not have a reason to lie.  *Id.* at 4, 9.  He admitted, though, that he "couldn't say" whether character testimony regarding Alceus' reputation as a peaceful person would have impacted the jury.  *Id.* at 9.

Following the hearing, the parties complied with the PCRA court's order to file briefs and thereafter, the PCRA court denied relief. This timely appeal followed.

On appeal, Alceus presents one issue for our consideration: "Did the PCRA court err when it denied [Alceus]' claim that trial counsel was ineffective for failing to call favorable character witnesses?" Alceus' Brief at 4.

Our review of an order denying a PCRA petition "is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Smith*, 194 A.3d 126, 132 (Pa. Super. 2018) (citation omitted). We review the record in the light most favorable to the prevailing party below and are bound by the PCRA court's findings of fact and credibility determinations; we cannot disturb either unless they are unsupported by the record. *Commonwealth v. Flor*, 259 A.3d 891, 902 (Pa. 2021); *see also Smith*, 194 A.2d at 132. We are not bound by the PCRA court's legal conclusions, which we review de novo. *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023).

Alceus' claim on appeal sounds in ineffective assistance of counsel for failing to call character witnesses in his defense. In conducting our review, we are mindful that of the well-settled law

> … that counsel is presumed to have been effective and that the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable

- 9 -

merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, [there is] a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Commonwealth v. Reid*, 259 A.3d 395, 405 (Pa. 2021) (citations and quotation marks omitted).

In establishing whether defense counsel was ineffective for failing to call witnesses, [an] appellant must prove: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Treiber*, 121 A.3d 435, 463-64 (Pa. 2015) (citation omitted).

Counsel may be deemed ineffective for failing to call character witnesses. *See, e.g., Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa. Super. 2001); *Commonwealth v. Gillespie*, 620 A.2d 1143, 1145 (Pa. Super. 1993). Although evidence of a person's character is not admissible to show the person acted in conformity with such character on a particular occasion, Pa.R.E. 404(a)(1), in a criminal case, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]" Pa.R.E. 404(a)(2)(A).

Evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the

- 10 -

commission of the crime charged. Such evidence must relate to a period at or about the time the offense was committed and must be established by testimony of witnesses as to the community opinion of the individual in question, not through specific acts or mere rumor.

*Commonwealth v. Medina*, 209 A.3d 992, 997 (Pa. Super. 2019) (citation omitted); *see also* Pa.R.E 405(a) (stating that admissible character evidence may be proved with testimony regarding the person's reputation in the community, not by the witness' opinion about the person's character or character trait). On cross-examination, the Commonwealth may inquire into relevant specific instances of the person's conduct that are probative of the character trait in question. Pa.R.E. 405(a)(1). The Commonwealth may not, however, inquire into allegations of other criminal conduct by the defendant that did not result in conviction. Pa.R.E. 405(a)(2).

"Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *Commonwealth v. Hull*, 982 A.2d 1020, 1025-26 (Pa. Super. 2009) (quoting *Commonwealth v. Weiss*, 606 A.2d 439, 442 (Pa. 1992)). When character evidence is offered, the jury must be instructed that evidence of the defendant's good character alone may create a reasonable doubt as to his or her guilt, resulting in acquittal. *Commonwealth v. Neely*, 561 A.2d 1, 3 (Pa. 1989).

The Pennsylvania Supreme Court has recognized the critical nature of character witnesses in cases where there are only two direct witnesses who

- 11 -

testify—one telling the story for the Commonwealth, the other telling a completely different story for the defense—colloquially referred to as "he said/she said" cases. *See Weiss*, 606 A.2d at 442. In *Commonwealth v. Weiss*, a jury convicted the defendant of statutory rape and related offenses for crimes committed against his four-year-old daughter. *Id.* at 440-41. Weiss was accused of inserting his finger and penis in his daughter's vagina, putting Cheerios in her vagina, cutting her vaginal area with a plastic knife, and pointing a gun at her when she screamed. *Id.* at 441. The child's parents were involved in a bitter custody battle, and this incident was alleged to have occurred during an overnight visit with Weiss. *Id.* at 441 & n.6. According to the mother's testimony, the child acted abnormally upon return from the visit, and she observed evidence of Weiss' alleged assaults while bathing the child. *Id.* at 441. The mother took her to the hospital, where a doctor's examination revealed "a one inch cut on the child's genital area consistent with having been cut by a plastic knife" and "a torn hymen." *Id.*

At Weiss' trial, the child, the mother, the doctor, and two nurses testified to the allegations against Weiss, and although Weiss called several witnesses (including one witness who testified that the child recanted), he was the only direct witness to testify in his defense. *Id.* Trial counsel called no character witnesses to testify on Weiss' behalf. *Id.* Following his conviction, Weiss filed a PCRA petition asserting that trial counsel's failure to call character witnesses constituted ineffective assistance. *Id.*

At the evidentiary hearing on his PCRA petition, Weiss offered the testimony of character witnesses, including his estranged wife's parents and brother, all of whom would have testified "to [Weiss'] good character reputation and his wife's lack thereof." *Id.* at 442. Trial counsel testified he was not sure whether he contacted every potential character witness given to him by Weiss and admitted that he did not reach out to those he did contact until the day before trial. *Id.* at 442-43. Weiss' trial counsel further testified that he was of the view that familial character witnesses, such as those advanced by Weiss, were thought of as "garbage" by the jury and he did not recall ever calling them to testify in any of his cases. *Id.* at 443.

The case reached our Supreme Court, which held that trial counsel's failure to call character witness in Weiss' defense constituted ineffective assistance of counsel. *Id.* Recognizing that the credibility of the witnesses was of "paramount importance" because the case involved only two direct witnesses, and further that character evidence is critical to the jury's determination of credibility, the Court found Weiss' claim had arguable merit. *Id.* at 442.

The Court further found no reasonable basis for trial counsel's decision. *Id.* at 442-43. Counsel's strategy had been to establish that the mother was lying and that she, in fact, was likely responsible for the child's injuries. *Id.* at 443. The Supreme Court found:

> In light of the overwhelming need for character evidence in a case such as this, counsel's limited investigation into the quantity

and/or quality of potential character witnesses on behalf of [Weiss], and counsel's prejudice toward familial witnesses, we find no reasonable basis to support trial counsel's decision not to call **any** character witnesses.

*Id.* at 443 (emphasis in original).

Turning to the prejudice prong, the **Weiss** Court recognized that a finding of prejudice required a demonstration "that the alternative not selected by counsel offered a substantially greater chance of success than the tactic chosen" and that its determination of prejudice required the Court to "focus on counsel's overall trial strategy and view his performance as a whole." **Id.** (citations omitted). Applying this standard to the case before it, and ultimately concluding that Weiss was prejudiced by trial counsel's failure to call character witnesses, the Court explained:

Counsel's stated strategy was not to contest the physical findings of sexual abuse, but to focus on the fact that it may have been [Weiss'] wife, not [Weiss] who "set the whole thing up." It would have been entirely consistent as well as highly beneficial, in light of this strategy, to present character witnesses, who not only would vouch for [Weiss'] good character, but would have impeached his wife's character at the same time.

Whereas the defense did not attempt to refute the physical findings, the evidence regarding the perpetrator boiled down to [Weiss'] word against the word of his wife and daughter. The only issue then, was whether [Weiss] or someone else was responsible for what happened. Considering there was no overwhelming evidence of guilt in this case, credibility of the witnesses was of paramount importance, and counsel's error not to employ character witnesses, familial or otherwise, undermined [Weiss'] chances of instilling reasonable doubt in the minds of the jury and resulted in prejudice to [Weiss].

- 14 -

We find, therefore, that even with the presumption of adequate performance, trial counsel's defense was the result of unreasonable professional judgment, and there is a reasonable probability that, absent trial counsel's error, the jury would have had a reasonable doubt respecting [Weiss'] guilt. Hence, the fundamental fairness of the proceeding has been undermined by the ineffective assistance of [Weiss'] trial counsel.

*Id.* (footnote and citations omitted). Based on the foregoing, our Supreme Court held trial counsel was ineffective for failing to call character witnesses and granted Weiss a new trial. *Id.* at 443-44.

In *Commonwealth v. Hull*, a case factually similar to the one pending before us, a jury convicted Hull of sex offenses committed against his adopted daughter. *Hull*, 982 A.2d at 1022. The only evidence presented by the Commonwealth to support Hull's culpability was testimony by the victim and her brother, and no one other than the victim testified to the acts upon which the charges were based. *Id.* at 1022-23. Trial counsel's strategy was to show that the children had a motive to lie—they testified that Hull and his wife struck them and they wanted to instead live with their mother—and that the crimes alleged did not occur. *Id.* at 1023, 1027.

We affirmed Hull's judgment of sentence on direct appeal. *Id.* at 1022. Hull then filed a PCRA petition alleging trial counsel's ineffectiveness for failing to call character witnesses in his defense. *Id.* The PCRA court agreed and granted Hull a new trial. *Id.* The Commonwealth appealed and we affirmed. Relying on *Weiss*, we agreed with the PCRA court that the case had arguable merit, as there were only two direct witnesses—one implicating Hull and one

- 15 -

denying his involvement. ***Hull***, 982 A.2d at 1023. We further agreed with the PCRA court that counsel did not act reasonably in failing to conduct a thorough investigation into the availability of character witnesses when counsel's "overall strategy was to question the children's credibility by formulating in the jurors' minds a motive for the children to fabricate their allegations against [Hull] and his wife." ***Id.*** at 1026. Lastly, the Court found Hull was prejudiced because "[e]vidence of [Hull's] good character, particularly in the absence of any bad-character evidence outside of the children's testimony, would have bolstered his defense," and the character evidence would have been consistent with trial counsel's strategy to show the jury that the children were lying about what they alleged occurred. ***Id.*** The Court rejected the Commonwealth's argument that the evidence against Hull was so overwhelming that the outcome would not have been different, as character evidence could cast doubt on that evidence, i.e., the brother's testimony. ***Id.*** at 1026-27.

Indeed, this Court has long recognized, and more recently reaffirmed in non-precedential decisions,[4] that in he said/she said cases, trial counsel may be found to have provided ineffective assistance for failing to present character witnesses. ***See Harris***, 785 A.2d at 1001; ***Gillespie***, 620 A.2d at 1145; ***Commonwealth v. Luther***, 463 A.2d 1073, 1078 (Pa. Super. 1983);

_____

[4] ***See*** Pa.R.A.P. 126(b) (stating that non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

*see also, e.g., Commonwealth v. Raker*, 609 MDA 2022, 2022 WL 16754076 at *6 (Pa. Super. Nov. 8, 2022) (non-precedential decision); *Commonwealth v. Soto*, 170 MDA 2019, 2019 WL 4390716 at *7-8 (Pa. Super. Sept. 13, 2019) (non-precedential decision).

Turning to the instant matter, Alceus contends that trial counsel provided ineffective assistance by failing to investigate and call character witnesses to testify at trial. Alceus' Brief at 6, 8-14. Alceus states that trial counsel failed to inform him that he could present character witnesses, or that the jury would be instructed that character evidence alone can be the basis for finding a reasonable doubt. *Id.* Alceus argues that because the central issue at trial involved the jury weighing Rodriguez's credibility against his own, trial counsel's decision not to conduct a "limited investigation" into potential character witnesses or to call them to testify in Alceus' defense was unreasonable. *Id.* at 10-11. Observing the "critical nature" of character testimony in cases like his, Alceus asserts that he was prejudiced by trial counsel's failings. *Id.* at 12.

The PCRA court found that trial counsel was not ineffective for failing to call character witnesses in Alceus' defense:

> [Trial counsel] specifically testified that adding character witnesses would have risked taking the focus away from his trial strategy. Further, [the PCRA court] did not find the testimony of the potential character witnesses at the evidentiary hearing credible. The character witnesses, [] Laroque and [] Thiombiano, testified that they know [Alceus] from Haiti. [] Laroque, specifically, could not remember the last year in which he spent time with [Alceus]. As [trial counsel] testified to [sic] at the

- 17 -

evidentiary hearing, [Alceus] has a theft in his criminal record. Additionally, [the PCRA court] notes that the evidence in this case includes witness testimony by the victim's mother and children, hospital records regarding injuries and statements, observations of the injuries by the police officer, and photographs of the injuries on the victims by a forensic officer. Thus, [the PCRA court does] not find that the absence of the witness' testimony was so prejudicial as to have denied [Alceus] a fair trial. Further, [the PCRA court] find[s] that [trial counsel's] decision to exclude the character witness testimony in order to strengthen trial strategy was reasonable.

PCRA Court Opinion, 5/22/2023, at 11 (record citations omitted).

Our review of the record, along with long-standing precedent, requires us to disagree with the PCRA court's conclusion. Beginning with the arguable merit prong, like **Weiss** and **Hull**, this is yet another he said/she said case—it was Alceus' word against Rodriguez's—making Alceus' credibility of "paramount importance." **See Weiss**, 606 A.2d at 442; **Hull**, 982 A.2d at 1023. Alceus testified at trial that he was not at Rodriguez's mother's apartment on the night in question and did not assault Rodriguez, while she maintained the opposite. N.T. 10/21/2019, at 50, 124, 127, 129, 131-32. Evidence of Alceus' character was therefore critical to the jury's determination of credibility and would serve as substantive evidence that, by itself, could create a reasonable doubt of guilt. **See Weiss**, 606 A.2d at 442; **Hull**, 982 A.2d at 1025-26. Alceus' claim of ineffective assistance of counsel thus has arguable merit.

We now turn to whether trial counsel had a reasonable basis for failing to present character witnesses at trial. As our Supreme Court has recognized,

[s]trategic choices made [by trial counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland v. Washington*, 466 U.S. 668, 690-91 (1984); *see also Commonwealth v. Johnson*, [] 966 A.2d 523, 535–36 ([Pa.] 2009) ("The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty, unless pursuant to a reasonable strategic decision, may lead to a finding of ineffective assistance.").

*Commonwealth v. Williams*, 141 A.3d 440, 463 (Pa. 2016).

By trial counsel's own admission, he never discussed character evidence with Alceus or investigated the availability of any such witnesses. N.T., 1/17/2023, at 7-9. Trial counsel's stated trial strategy was to show Rodriguez not telling the truth about Alceus assaulting her. *Id.* at 4-5. In explaining why he did not utilize character evidence of Alceus' reputation for peacefulness, trial counsel said he believed "there was a risk" that it would take the focus away from what T.R. did (or, more to the point, did not) say during his interview with CRC, which he used to support his overall strategy of showing that Rodriguez was lying. *Id.* at 9.

The PCRA court included trial counsel's stated concern in its opinion denying PCRA relief, but offered no analysis to support its conclusion that this

constituted a reasonable strategic basis for trial counsel's failure to investigate and call character witnesses. It further did not explain how offering positive character evidence for Alceus would have been inconsistent with trial counsel's strategy of showing that Rodriguez was being untruthful. **See** PCRA Court Opinion, 5/22/2023, at 11.

As this Court and our Supreme Court have repeatedly held, presenting character evidence under these precise circumstances is entirely consistent with—and indeed, bolsters—a strategy of establishing that the Commonwealth's direct witness is lying. **See, e.g., Weiss**, 606 A.2d 439; **Hull**, 982 A.2d 1020; **Harris**, 785 A.2d 998; **Gillespie**, 620 A.2d 1143; **Luther,** 463 A.2d 1073; **Raker**, 609 MDA 2022, 2022 WL 16754076; **Soto**, 170 MDA 2019, 2019 WL 4390716. Presenting witnesses who could vouch for Alceus' reputation for peacefulness in the community would have aided, not detracted from, trial counsel's strategy of challenging the veracity of Rodriguez's testimony. Trial counsel's failure to investigate or discuss character witnesses with Alceus demonstrates that he failed to recognize the crucial role character evidence would have played in support of his overall trial strategy. **See, e.g., Luther**, 463 A.2d at 1078-79 ("A trial counsel cannot fault his client for failing to provide names of character witnesses, if witnesses were available, when the trial counsel has been derelict in not adequately discussing with his client the importance of such a defense.").

Further, trial counsel did not claim, and the record does not indicate, that his reason for not investigating or calling character witnesses was to shield the jury from negative character testimony. Although trial counsel was aware that Alceus had prior convictions for theft and driving under the influence, he recognized those convictions would not be admissible as bad character evidence to contradict witness testimony that Alceus has a reputation for peacefulness.[5] N.T., 1/17/2023, at 10.

Based on the foregoing, we conclude that the record does not support the PCRA court's conclusion that trial counsel's failure to conduct **any**

_____

[5] In its analysis, the PCRA court noted, without expounding, that Alceus' criminal record included a theft conviction, purportedly as a basis for finding that trial counsel's strategy of not calling character witnesses was reasonable. PCRA Court Opinion, 5/22/2023, at 11. This was error. As discussed supra, although a criminal conviction can open the door to attacking a defendant's character with prior criminal convictions, the convictions must be for crimes pertinent to the character trait for which the defense provided testimony. Pa.R.E. 404(a)(2)(A). A theft conviction is pertinent to the trait of truthfulness, not peacefulness. **See Commonwealth v. Fulton**, 830 A.2d 567, 572-73 (Pa. 2003) (plurality).

We further observe that Alceus testified in his own defense at trial and his theft conviction could have been used to impeach his testimony. **Commonwealth v. Hannibal**, 156 A.3d 197, 216 (Pa. 2016) ("Because appellant chose to testify on his own behalf, any of his crimen falsi convictions over the prior ten years would have been admissible in the Commonwealth's rebuttal case regardless of whether appellant presented character witnesses."); **Commonwealth v. Washington**, 269 A.3d 1255, 1264 (Pa. Super. 2022) (en banc) ("Crimes involving dishonesty or false statement are commonly referred to as crimen falsi crimes, for purposes of impeaching a witness's credibility.") (citations and brackets omitted); **Commonwealth v. Cole**, 227 A.3d 336, 340 (Pa. Super. 2020) (stating theft is a crimen falsi offense).

investigation into the availability of character witnesses was reasonable and strategic. *See Weiss*, 606 A.2d at 443; *Hull*, 982 A.2d at 1026; *see also Williams*, 141 A.3d at 463; *see also, cf., Johnson*, 966 A.2d at 535–36. Under the circumstances present in this case, where there are only two direct witnesses, each providing contradictory testimony as to what occurred, trial counsel's strategy was to show the jury that the Commonwealth's witness was lying, and there was no known bad character evidence for the Commonwealth to present, there is no reasonable strategic basis to support trial counsel's failure to investigate potential character witnesses.

Finally, we must determine whether Alceus was prejudiced by trial counsel's failure to present character witnesses.[6] In determining that Alceus was not prejudiced by the absence of character evidence, the PCRA court

_____

[6] As noted supra, to establish trial counsel's ineffectiveness for failing to call witnesses, Alceus must also satisfy a five-prong test. *Treiber*, 121 A.3d at 463-64. The record reflects, and neither the PCRA court nor the Commonwealth contests, that Alceus satisfied the first four prongs of the test. Alceus presented character witnesses at the PCRA hearing who testified that they were available and would have testified at trial as to Alceus' reputation for peacefulness in the community. Trial counsel should have known about these witnesses—had he discussed the availability of character testimony with Alceus, Alceus would have provided him with this information. The only remaining issue is whether Alceus satisfied the fifth element of the test by establishing that he was prejudiced by counsel's conduct. As both the Supreme Court and this Court have tacitly recognized, establishing prejudice based upon trial counsel's failure to call a witness utilizes the same standard as establishing prejudice generally to prove ineffective assistance of counsel. *See, e.g., id.* at 445, 464; *Weiss*, 606 A.2d at 443; *Hull*, 982 A.2d at 1026; *Raker*, 609 MDA 2022, 2022 WL 16754076 at *2, 5; *Soto*, 170 MDA 2019, 2019 WL 4390716 at *5-6, 8.

found the proposed character witnesses not credible and generally pointed to the Commonwealth's evidence at trial. PCRA Court Opinion, 5/22/2023, at 11. The full extent of the PCRA court's credibility finding was that it "did not find the testimony of the potential character witnesses at the evidentiary hearing credible. The character witnesses, [] Laroque and [] Thiombiano, testified that they know [Alceus] from Haiti. [] Laroque, specifically, could not remember the last year in which he spent time with [Alceus]." *Id.*

With respect to Laroque, the record reflects the following exchange occurred at the PCRA hearing:

BY [PCRA COUNSEL]:

Q. And how long had you known [] Alceus? How long do you know him?

A. That's long time ago, that's long time ago. I'm 55 now but he's less than a year than me.

THE COURT: So you knew him when he was younger in Haiti?

THE WITNESS: Exactly.

THE COURT: Got it.

BY [PCRA COUNSEL]:

Q. And do you know other people that know [] Alceus?

A. Yes.

Q. And amongst yourself and those other people that know [] Alceus, does [] Alceus have a reputation in the community for being peaceful?

THE COURT:    Well, before you get there, when's the last time you actually had contact with the defendant?

THE WITNESS:    Last time, before he go to the jail, he was, like, sitting with me and (sic) Thanksgiving.

THE COURT:    Thanksgiving of what year, sir?

THE WITNESS:    Um, I'm not remember.  But, you know, that's – but he get, like four years in jail now.  But before that.

THE COURT:    I missed the last part.

THE WITNESS:    I think he got four years in the jail but before the date.

THE COURT:    That's what I'm asking.  When is the last time you had contact with him before he went to prison?

THE WITNESS:    The last time I'm sitting with them and another friend in my house at the table for the Thanksgiving.  But I'm not remember that year before he go to the jail.

BY [PCRA COUNSEL]:

Q.    Was it after he was arrested or before he was arrested?

A.    Yeah.

Q.    After?

A.    No.  After – I think he go to the jail first and then he come back.  When he come back, I spending to him and then he back to the jail again.

THE COURT:    And you don't remember the year?

THE WITNESS:    I'm not remember the year.  But you got four years on the jail now?  I don't know.

N.T., 1/17/2023, at 12-13.  The PCRA court discounts Laroque's testimony because he could not remember the specific year that he last spent time with

- 24 -

Alceus. Although Laroque could not identify the year, as the above exchange reflects, he testified that he last saw Alceus the Thanksgiving before Alceus was incarcerated. Moreover, the date he last saw Alceus has little bearing on the testimony he provided, which related to his knowledge of Alceus' reputation for peacefulness in the community. This requires that Laroque knew what others in the community thought of Alceus' reputation at or around the time of the crime. Indeed, pursuant to Rule 405 of the Pennsylvania Rules of Evidence, Laroque's personal opinion about Alceus was irrelevant and inadmissible. Pa.R.E 405(a).

We are very aware that we must defer to the PCRA court's findings of fact and credibility determinations, but this deference applies only insofar as they are supported by the record. *See Flor*, 259 A.3d at 902; *Smith*, 194 A.2d at 132; *see also Commonwealth v. Hereford*, 1162 WDA 2022, 2024 WL 507083, at *8 (Pa. Super. Feb. 9, 2024) (non-precedential decision) ("[W]e are cognizant that our standard of review is very deferential to the PCRA court's credibility assessments. However, the PCRA court's credibility assessments are not absolute, and are still subject to review on appeal. Importantly, the PCRA court's credibility determination must be supported by

the record.") (emphasis and citations omitted). Simply put, the PCRA court's finding that Laroque was not credible is not supported by the record.[7]

Regardless of whether the PCRA court properly discounted Laroque's testimony, though, it made no credibility determination of Coulange, the character witness who provided stipulated testimony about Alceus' good character and did not provide live testimony before the PCRA court. Nor could it have, as it did not have an opportunity to observe the witness firsthand. **See Commonwealth v. King**, 990 A.2d 1172, 1180 (Pa. Super. 2010) (stating a judge "could not possibly have made fully informed credibility determinations without observing the demeanor of the witnesses"); **see also Commonwealth v. Perrin**, 291 A.3d 337, 348 (Pa. 2023) (Dougherty, J. concurring) ("in the stipulation context, as on appeal, there is no firsthand evaluation of the witness's in-court testimony under oath and subject to the crucible of questioning, which is indispensable to an informed evaluation of credibility") (citing **King**, 990 A.2d at 1180).

_____

[7] Although the PCRA court did not explain its credibility finding with respect to Thiombiano, there is ample record support for its determination that he was not credible as Thiombiano's testimony before the PCRA court directly conflicted with the information he provided to trial counsel prior to trial. **See** PCRA Court Opinion, 5/22/2023, at 11; **compare** N.T., 1/17/2023, at 6-7, 41 (trial counsel testifying at PCRA hearing that, during his interview with Thiombiano before trial, he told trial counsel that he was with Alceus the afternoon and night following the assault), **with id.** at 24, 31 (Thiombiano testifying at PCRA hearing that he was with Alceus the afternoon and night of the assault).

The PCRA also cited the Commonwealth's evidence at trial in its conclusion that the absence of character evidence was not so prejudicial as to have denied Alceus a fair trial. PCRA Court Opinion, 5/22/2023, at 11. This was error for several reasons. First, some of the evidence the PCRA court cited in its opinion was not presented at trial. Contrary to the PCRA court's statement, Rodriguez's mother and children did not testify at trial.[8] **Compare** **id.**, **with** N.T., 10/21-22/2019. Further, the PCRA court's reliance on evidence of the physical injuries sustained by Rodriguez and the twins ignores the longstanding and well-settled precedent that character evidence is substantive evidence that, in and of itself, is sufficient to raise a reasonable doubt as to a defendant's guilt.

> Evidence of good character is substantive and positive evidence, not a mere [makeweight] to be considered in a doubtful case, and, according to all our authorities, is an independent factor which may of itself engender a reasonable doubt or produce a conclusion of innocence. To be sure, it is to be **considered** with all the other evidence in the case. But it is not to be **measured** with or by other evidence. Its probative value, its power of persuasion, does not depend upon, and is not to be measured by, or appraised according to, the might or the infirmity in the Commonwealth's case. Even though, under all the other evi[d]ence a jury could reach a conclusion of guilt, still if the character evidence creates a reasonable doubt or establishes innocence a verdict of acquittal must be rendered.

---

[8] As noted supra, trial counsel offered, and the trial court admitted, a video of a CRC interview of one of the children. None of the children testified.

*Commonwealth v. Padden*, 50 A.2d 722, 725 (Pa. Super. 1947) (en banc) (emphasis in original; citations omitted).

Because trial counsel's strategy did not involve an attempt to refute that Rodriguez and her children sustained physical injuries, evidence as to who caused the injuries boiled down to Alceus' word against Rodriguez's. The only question was whether Alceus or someone else was responsible for what happened. As Rodriguez's testimony was the sole evidence that placed Alceus at the scene of the crime that night, the credibility of the witnesses was of paramount importance. Evidence of Alceus' reputation for peacefulness would have bolstered his defense and was wholly consistent with trial counsel's strategy to show Rodriguez was lying. Trial counsel's failure to investigate, let alone call, character witnesses in support of his defense strategy undermined Alceus' chances of instilling reasonable doubt in the minds of the jury. As such, and consistent with our prior case law, we conclude Alceus was prejudiced by counsel's omissions. *See Weiss*, 606 A.2d at 443; *Hull*, 982 A.2d at 1026.

Based on the foregoing, the PCRA court erred and abused its discretion by denying Alceus PCRA relief. Accordingly, we reverse the order the PCRA court, vacate Alceus' judgment of sentence, and remand for a new trial.[9]

---

[9] We are mindful that the Commonwealth now faces the prospect of retrial for an incident occurring more than six years ago. As we explained in *Hull*, however, "the value of the character witnesses lies not in what they witnessed,

*(Footnote Continued Next Page)*

Order reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Olson joins the opinion.

Judge Nichols concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/08/2024

---

but in directly supporting [Hull's] defense and indirectly refuting the children's allegations. Accordingly, permitting [Hull] the opportunity to assert a colorable defense properly constitutes the only fair remedy in this case." **Hull**, 982 A.2d at 1027 n.3. In the same way, the value of character witnesses lies in directly supporting Alceus' defense and indirectly refuting Rodriguez's allegations. Permitting him this opportunity is the only fair remedy. **See id.**