J-S46018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GLENN EDWARD TETRO | : | |
| | : | |
| Appellant | : | No. 845 WDA 2023 |

Appeal from the PCRA Order Entered June 21, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000227-2018

BEFORE:  LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY BOWES, J.:                    **FILED: JANUARY 13, 2025**

Glenn Edward Tetro appeals from the June 21, 2023, order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

Following a jury trial in 2019, Appellant was convicted of numerous offenses based upon his sporadic sexual abuse of the minor daughter of his ex-wife between 1995 and 1998.  Among other things, the jury convicted him of both rape and involuntary deviate sexual intercourse ("IDSI").  The trial court sentenced Appellant to an aggregate term of twenty-one to eighty years in prison, imposing concurrent sentences with respect to each of three rape and IDSI convictions.

On direct appeal, this Court affirmed the judgment of sentence in part but vacated the concurrent sentences for IDSI, since they merged with the rape convictions.  Appellant timely petitioned for allowance of appeal, which our High Court denied on August 31, 2021.  He did not submit a petition for

writ of certiorari to the Supreme Court of the United States, and therefore his judgment of sentence became final on November 29, 2021. *See* U.S. Sup. Ct. R. 13(1) ("A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within [ninety] days after entry of the order denying discretionary review[.]").

Appellant retained new counsel and filed a timely PCRA petition on November 29, 2022. *See* 42 Pa.C.S. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final[.]"). Relevant here, the petition, as amended, asserted a claim that Appellant's trial counsel, Matthew Ness, Esquire, was ineffective for failing to call character witnesses on Appellant's behalf during trial. The court conducted a hearing wherein Attorney Ness, six character witnesses, and Appellant all testified.

Attorney Ness attested that he was retained by Appellant approximately three months before trial. He met with Appellant several times during that period, and they discussed "the concept of character reputation witnesses." N.T. PCRA Hearing, 6/12/23, at 10. This included "the potential value relative to the difference between a personal subjective assessment [versus] the community's objective assessment." *Id*. at 11. Attorney Ness stated that he did not recall locating or interviewing any witnesses before trial that could satisfactorily speak to Appellant's reputation or character in the community. *Id*. He indicated instead that any potential witnesses identified by Appellant

- 2 -

could only offer subjective assessments, or were very close family members and therefore biased. Attorney Ness further stated that in his practice, he did not like calling character witnesses who are easily impeached on cross-examination, which he believed would happen here based on his investigation.

During cross-examination, Attorney Ness also recalled that Appellant agreed with his recommendation not to call character witnesses. Counsel further concurred with the Commonwealth's attorney that there are perils to calling character witnesses, such as opening the door to evidence that could be harmful to the client. Attorney Ness then discussed how before trial, the Commonwealth filed a motion *in limine* to introduce evidence concerning a protection from abuse ("PFA") order Appellant's ex-wife obtained against Appellant. The order was entered after Appellant was alleged to have thrown his ex-wife through a glass door at Brookville Behavioral Health ("BBH"), where Appellant worked. Attorney Ness feared particularly that calling any character witness associated with BBH would open the door to that testimony, despite the trial court denying the motion *in limine*. He recounted that he and Appellant specifically discussed this risk before deciding not to call character witnesses.

After Attorney Ness's testimony at the PCRA hearing, Appellant called six additional witnesses. Each of them previously signed certifications declaring that they would have testified at trial as to Appellant's reputation in the community for being peaceful and law abiding. Notably, three of them, Kyle Haugh, Jan Barnes, and Kylie Williams, were born in the 1990s and would

have been either not yet born or young children at the time of the offenses underlying the convictions. The remaining three witnesses, Alexandrea Bodenhorn, Rodney Beck, and Brian White, were all acquainted with Appellant through working with him at BBH beginning in the 2000s. Ms. Bodenhorn acknowledged that the incident leading to the PFA order was probably discussed amongst the BBH community, and further, that her knowledge of Appellant's reputation in the community came solely from discussions she had with her co-workers at BBH. Both Mr. Beck and Mr. White indicated that while they knew Appellant for over a decade at that point, they could not speak to Appellant's reputation during 1995 to 1998. Indeed, none of the witnesses could attest to Appellant's reputation from that period.

Appellant testified briefly, disputing that he agreed with Attorney Ness not to call character witnesses at trial. He also stated that Attorney Ness was aware of the witnesses in advance of trial. The PCRA court took the matter under advisement, ultimately entering an opinion and order denying relief on June 21, 2023. Appellant timely appealed.

Thereafter, PCRA counsel moved for an extension of time in which to file a statement of errors pursuant to Pa.R.A.P. 1925(b), which the court granted. Counsel then filed a second request for an extension along with a motion to withdraw, but before that was decided, Appellant submitted a request to proceed *pro se*. The court denied the extension and did not conduct a hearing concerning Appellant's request. In this Court, counsel filed an application for special relief. We remanded the matter for the PCRA court to conduct a

***Grazier***[1] hearing. The court complied with our directive, finding that Appellant knowingly and voluntarily wished to represent himself for the appeal. The court also gave PCRA counsel leave to withdraw, and Appellant filed a *pro se* statement of errors. The court authored a responsive Rule 1925(a) opinion, directing us to its prior opinion and the order denying the PCRA petition.

Appellant presents nine issues for our consideration:

I.    Did the PCRA court error [*sic*] and abuse its discretion by denying Appellant PCRA relief?

II.   Did the PCRA court commit an error of law in determining that the PFA issued against Appellant could have been used to impeach the testimony of certain character witnesses?

III.  Did the PCRA court show prejudice by applying inconsistent determinations of what is a "relative time period" for the evidence?

IV.   Did the trial attorney employ a reasonable strategy when deciding not to use character witnesses?

V.    Should testimony be deemed inadmissible because the witnesses were young children or did not personally know Appellant at the time when the incidents took place?

VI.   Is the admission by the PCRA court that all witnesses testified that Appellant "was known in the community to be an honest and law-abiding citizen" enough to establish that prongs [one] through [four] of ***Commonwealth v. Goodmond***, 190 A.3d 1197, 1202 (Pa.Super. 2018)[,] has been met?

VII.  Did the PCRA court misrepresent the significance of the ***Allen*** [***v. United States***, 164 U.S. 492 (1896)] charge argument and choose to ignore the legal standards of establishing prejudice?

---

[1] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

VIII. Should the inclusion of inadmissible testimony that is based on personal experience impeach the presentation and validity of testimony that is admiss[i]ble?

IX. If the [Superior] Court does not grant relief based on the aforementioned issues, should this matter be be [*sic*] referred back to the Commonwealth court [*sic*] to hear claims of ineffective PCRA counsel?

Appellant's brief at 4-5 (some capitalization and citations altered, unnecessary articles omitted).

Appellant's first eight issues concern the court's denial of his underlying PCRA petition, particularly relating to his claim of ineffective assistance of trial counsel for failure to call character witnesses.[2] "On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. We apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Wharton**, 263 A.3d 561, 567 (Pa. 2021) (citations omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **Commonwealth v. Thomas**, 270 A.3d 1221, 1226 (Pa.Super. 2022).

It is well-settled that counsel is presumed to be effective, and the petitioner bears the burden of proving otherwise. **See Commonwealth v.**

---

[2] We note with displeasure that Appellant's brief contains a single argument section, despite his raising nine issues, in violation of our appellate rules. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein[.]"). While we would be within our rights to sanction Appellant for this violation, we opt not to do so here as we can ascertain his claims.

*Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*).  To do so, he must establish the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id*. (citations omitted).  As failure to prove any of the three elements will result in dismissal of the ineffectiveness claim, "[w]e are not required to analyze the elements of an ineffectiveness claim in any particular order." *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019).

In its opinion denying Appellant's petition, the PCRA court concluded that Attorney Ness articulated a reasonable strategy for deciding not to call character witnesses.  *See* PCRA Court Opinion, 6/21/23, at 3.  Since we find that determination to be dispositive, we focus our discussion on that prong. In that vein, our Supreme Court has stated the following:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest.  . . . [T]his cannot be a hindsight evaluation of counsel's performance, but requires an examination of whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect the defendant's interests.  Our evaluation of counsel's performance is highly deferential.

*Commonwealth v. Williams*, 141 A.3d 440, 463 (Pa.Super. 2016) (cleaned up).

- 7 -

Regarding character witnesses, we observe that "[e]vidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation for the particular trait or traits of character involved in the commission of the crime charged." ***Commonwealth v. Alceus***, 315 A.3d 853, 860 (Pa.Super. 2024) (citation omitted). However, "[s]uch evidence **must relate to a period at or about the time the offense was committed**." ***Id***. (emphasis added, citation omitted). Pennsylvania Rule of Evidence 405 provides that "[i]n a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible." Pa.R.E. 405(a)(2).

In denying Appellant's PCRA petition, the PCRA court noted that Attorney Ness was not encouraged by his preliminary interviews with the character witnesses, who would testify based only on their personal interactions with Appellant. PCRA Court Opinion, 6/21/23, at 3. The court found that the testimony actually given by the witnesses at the PCRA hearing evinced that they could not identify other persons within the community "with whom they had actually discussed the trait." ***Id***. It therefore concluded that Attorney Ness was fully cognizant that none of Appellant's proposed witnesses would withstand scrutiny on cross-examination. ***Id***. This was because some were small children at the time of the acts, some "seemed to lack any real sense that 'the community' referred to more than one or two other people," and some "would have opened the door" to damaging evidence concerning the incident at BBH and Appellant's ex-wife being thrown through the glass

- 8 -

door. *Id*. The court further found credible Attorney Ness's statement that Appellant agreed with the decision not to call such witnesses. *Id*.

In response, Appellant argues that the PCRA court erred in concluding that Attorney Ness had a reasonable basis for not calling character witnesses. He first asserts that Attorney Ness's fear that the Commonwealth would impeach the character witnesses about the PFA incident was unfounded, since Pa.R.E. 405(a)(2) prohibits cross-examination of allegations of criminal conduct that do not result in a conviction. *See* Appellant's brief at 10. Appellant notes that the PFA order in question was entered into by consent and did not constitute a conviction. *Id*. at 11. He compares this case to *Commonwealth v. Soto*, 2019 WL 4390716 (Pa.Super. 2019) (non-precedential decision), wherein this Court held that the Commonwealth could not ask a character witness about a drug-related sanction imposed on Soto when Soto was never charged with a crime related thereto. *Id*. at * 7; Appellant's brief at 11-12.

Appellant next contends that had Attorney Ness contacted all the witnesses who testified at the PCRA hearing before trial and diligently prepared them, he would have been pleased with the responses and found them credible to testify as character witnesses. *See* Appellant's brief at 13. Appellant maintains that any suggestion from Attorney Ness's testimony that he had a limited time to prepare for trial could have been addressed with a continuance request. *Id*. He further criticizes the notion that close friends or family members should not be called as character witnesses, as that is

unsupported by the law. *Id*. at 13-14. Finally, Appellant rejects the position that character witnesses must know a defendant's reputational character during the time the offenses occurred, but rather argues that they can learn about and discuss a defendant's reputation during that period after the fact. *Id*. at 17-18.

For its part, the Commonwealth argues that Appellant's witnesses at the PCRA hearing demonstrated their bias by testifying as to how close they were to Appellant, which supported Attorney Ness's worry that such testimony bore little weight. *See* Commonwealth's brief at 3-4. It further avers that nearly every witness was unfamiliar with Appellant's reputation at the time of the incidents. *Id*. at 4. The Commonwealth highlights especially Ms. Bodenhorn's testimony that the BBH community knew of and probably discussed the incident underlying the PFA order. *Id*.

Additionally, the Commonwealth contends that *Commonwealth v. Adams*, 626 A.2d 1231 (Pa.Super. 1993), which it acknowledges predates Rule 405, injects uncertainty as to the scope of what may be asked of character witnesses. *See* Commonwealth's brief at 5-7. In *Adams*, this Court drew a distinction between instances where the prosecution sought to prove specific acts of misconduct and "those where the purpose of the examination [was] to test the accuracy of the testimony by showing either that the witness is not familiar with the reputation concerning which he has testified or that his standard of what constitutes good repute is unsound." *Adams*, 626 A.2d at 1233. The *Adams* Court held that the latter was permissible, and that a

character witness could be asked about a statement he made to police about the defendant previously selling drugs, since the question was focused on matters discussed by the witness and went to his judgment of reputation. *Id*. The Commonwealth argues that while it perhaps could not have asked any character witnesses about the PFA incident outright in order to prove that Appellant engaged in the alleged conduct, it could have raised the issue in such a way as to test the accuracy of the witness's familiarity with Appellant's reputation. *Id*. at 6. This in turn justified Attorney Ness's concerns about calling such witnesses.

Upon our review, and as indicated above, we find no error with the PCRA court's conclusion that Attorney Ness had a reasonable basis for recommending to Appellant not to call character witnesses. Counsel's testimony at the PCRA hearing exemplified that he discussed the concept of character witnesses with Appellant on several occasions, and that Appellant agreed with the strategy. Although Appellant argues that his witnesses were capable of becoming familiar with his reputation in 1995 through 1998 despite meeting him later, none of his witnesses actually testified to being able to speak to his character during that period. Therefore, Attorney Ness had a rational basis to believe that the character evidence offered little to no value.

Likewise, the evidence at the PCRA hearing supported Attorney Ness's concern about such witnesses opening the door to the jury hearing about the PFA incident. Even assuming as true that the Commonwealth was not permitted to specifically ask about the PFA procured against Appellant, it could

nonetheless test the veracity of the witnesses who worked at BBH with Appellant and whether his reputation for peacefulness was ever discussed in that context. Counsel's decision to avoid that risk, coupled with the relatively little value perceived from the character testimony, rendered his suggestion to Appellant not to call the witnesses reasonable. In short, we conclude that Attorney Ness "made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [Appellant]'s interests." **Williams**, 141 A.3d at 463. No relief is due.

In Appellant's ninth issue on appeal, he requests that if we uphold the PCRA court's order, we should nevertheless remand this case for him to develop his claim of ineffective assistance of PCRA counsel.[3] **See** Appellant's brief at 5. However, beyond merely identifying this issue in a single sentence in his statement of questions, he does not mention it again or otherwise take any additional steps to develop this argument, including even bald allegations as to how PCRA counsel may have been ineffective. Therefore, to the extent that this constitutes a separate issue on appeal, it is waived. **See**, **e.g.**, **Commonwealth v. Westlake**, 295 A.3d 1281, 1288 n.10 (Pa.Super. 2023) ("Appellant's undeveloped argument in this regard results in waiver of the issue.").

---

[3] **See Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021) (holding that a "petitioner [may] raise claims of ineffective PCRA counsel at the first opportunity, even if on appeal").

Based on the arguments presented, we have no cause to disturb the court's order denying Appellant's PCRA petition.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/13/2025