J-A12035-24

2024 PA Super 131

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAVID A. STAUFFENBERG :
:
Appellant : No. 2095 EDA 2023

Appeal from the Order Entered July 25, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0017052-2019

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED JUNE 25, 2024**

Appellant, David A. Stauffenberg, appeals from the order entered in the Court of Common Pleas of Philadelphia County denying his petition for a *writ of certiorari* following his conviction by the Philadelphia Municipal Court on the charges of possession of a controlled substance, driving while under the influence ("DUI") of a controlled substance or metabolite first offense, and DUI of a controlled substance-impaired ability first offense.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On June 27, 2019, the Commonwealth charged Appellant with the offenses indicated

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), 75 Pa.C.S.A. § 3802(d)(1), and 75 Pa.C.S.A. § 3802(d)(2), respectively.

*supra*, and his trial was listed before the Honorable Karen Simmons of the Philadelphia Municipal Court. On November 10, 2021, Appellant, who was represented by counsel, appeared before the Municipal Court and made an oral motion to suppress all evidence. Specifically, Appellant contended the stop of his vehicle was unlawful, the police did not have probable cause to arrest him, and the portion of the Pennsylvania Department of Transportation ("PennDOT") DL-26B form requesting a "signature of operator" was facially unconstitutional.

The Municipal Court conducted a suppression hearing at which Pennsylvania State Police Trooper Adam Holtz testified that, on June 26, 2019, he was on duty and driving a marked patrol vehicle in the area of Allegheny Avenue and Richmond Street. N.T., 11/10/21, at 6. At approximately 4:46 p.m., he observed a silver Ford pickup truck traveling "at a speed faster than the flow of travel eastbound." *Id.* at 8. Trooper Holtz discovered the pickup truck was registered to "David Stauffenberg." *Id.* An additional "query of that registration returned a suspended registration for type F insurance cancelation, registration for type I revocation, and the registration was also expired from May of 2019." *Id.* Accordingly, the trooper effectuated a traffic stop of the pickup truck. *Id.*

Trooper Holtz testified he approached the driver, who was later identified as Appellant, and he asked him for his driver's license, registration, and insurance information. *Id.* Appellant responded that he was driving his

- 2 -

brother's pickup truck, and he did not have any documents or a driver's license with him.  *Id.*  Appellant identified himself as "Michael Stauffenberg" with a birth date of "8/5/72."  *Id.* at 8-9.  However, when the trooper entered this information into the police's mobile data terminal, he discovered no "Michael Stauffenberg" with that birth date.  *Id.* at 9.  Thus, the trooper returned to the driver and informed him that the information was incorrect.  Appellant again identified himself as "Michael Stauffenberg;" however, he provided a different birth date.  *Id.*  When the trooper entered this information into the mobile data terminal, he discovered a driver's license photograph of "Michael Stauffenberg," but the photograph did not match Appellant's physical appearance.  *Id.*

At this point, Trooper Holtz asked Appellant to exit the pickup truck, and when he explained that the driver's license photograph of "Michael Stauffenberg" did not resemble him, Appellant admitted he was the registered owner, "David Stauffenberg."  *Id.*  Trooper Holtz entered Appellant's correct name into the mobile data terminal, and he discovered Appellant's driver's license was suspended.  *Id.*

During the interaction, the trooper noticed that Appellant's "eyes appeared to be dilated.  He was sweating and shaking at the time."  *Id.* at 10.  Given these physical indicators, as well as the fact he had lied about his identity, Trooper Holtz asked Appellant whether he could search the pickup truck, and Appellant verbally consented.  *Id.*  The trooper found a "rock-like

substance…inside of a bag in the front seat of the [pickup truck]." *Id.* The trooper indicated the substance was consistent with methamphetamines. *Id.* at 21.

Trooper Holtz conducted standard field sobriety tests, which revealed multiple indicators of impairment, and he requested that Appellant "submit to a chemical test of blood after being detained on a suspicion of DUI." *Id.* at 10. The trooper specifically testified that he advised Appellant of the blood test warnings regarding waiver of rights. *Id.* at 12-13. Appellant consented to the blood draw, which was completed at the Philadelphia Detention Unit. *Id.* at 10.

On cross-examination, Trooper Holtz clarified that he read the DL-26B consent form regarding the rights and penalties for a motorist's refusal to consent to a blood draw when he asked Appellant for his consent for the blood draw. *Id.* at 22. He indicated he read the form exactly as it is provided to the police by PennDOT. *Id.* He agreed that, in reading the form, he advised Appellant that he was under arrest, and he had no right to an attorney. *Id.* at 22-23. He also agreed that the form contains an area indicating "signature of operator," and Appellant signed the form in this area. *Id.* at 23. He conceded that Appellant was not provided with *Miranda*[2] warnings before Appellant signed the form. *Id.* at 24.

_____

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Appellant testified at the suppression hearing. He admitted he was stopped by Trooper Holtz on June 26, 2019, and he was driving a pickup truck. *Id.* at 27. He indicated he was not speeding. *Id.* at 28. He admitted he gave the trooper consent to search the pickup truck, and he submitted to field sobriety tests. *Id.* at 29. Appellant admitted he had consumed drugs or alcohol approximately five or six hours prior to the trooper stopping his vehicle. *Id.* at 29-30.

On cross-examination, Appellant admitted he initially lied to the trooper about his identity, and he attempted to assume his brother's identity. *Id.* at 30. He also admitted that he signed the DL-26B consent form. *Id.* at 35. Appellant admitted that, in June of 2019, he was a regular user of cocaine and amphetamines. *Id.* at 36. He admitted that within 24 hours of the instant stop he had used either cocaine or amphetamines. *Id.*

At this point, defense counsel asked that the signed DL-26B consent form be entered into evidence, and the Commonwealth did not object. *Id.* at 37. At the conclusion of the suppression hearing, the Municipal Court held the police had a lawful basis to stop Appellant's pickup truck and arrest him. However, the Municipal Court concluded the DL-26B consent form is unconstitutional since it requires a suspect to sign as the "operator" of the vehicle without having received *Miranda* warnings. *Id.* at 56. The Municipal Court relevantly indicated the following:

> The only issue before me is whether it's constitutional or unconstitutional the word operator. And the motion regarding the

- 5 -

word operator only is relevant here because, clearly, one of the elements of driving under the influence is operation or physical control of the motor vehicle….

I find that…the form could be easily—the word could easily be changed to say, as [defense counsel] has stated, the defendant or I can think of a million words, and I'm not going to go through them right now after we have done this long case….I do find that for a person to be forced to sign something acknowledging they are, in fact, the operator of a vehicle under the auspices if you don't sign it that it will be used against you and give you all the reasons that it will be used against you….I do find that the statement—the one section and the simple way of just changing the word from operator to subject or defendant or anything other than operator which is clearly an element of driving under the influence is clearly unconstitutional. As a result, the motion is granted as to the constitutionality of the DL-26 only as to that section.

*Id.* at 56-58. The Municipal Court granted Appellant's motion to suppress and indicated "anything that was derivative or came from the usage of this unconstitutional form" should be suppressed. *Id.* at 58.

On December 9, 2021, the Commonwealth filed a timely petition for a *writ of certiorari* with the Court of Common Pleas of Philadelphia County seeking reversal of the Municipal Court's order directing suppression of the evidence in Appellant's case. *See Commonwealth v. Frazier*, 471 A.2d 866 (Pa.Super. 1984) (discussing petitions for *writ of certiorari* from the Municipal Court to the Court of Common Pleas). Further, given there were numerous other cases involving similar constitutional issues as those presented in Appellant's case, the Commonwealth filed a petition for *en banc* consideration of the matter by the Court of Common Pleas on July 25, 2022.

On August 4, 2022, the Honorable Lisette Shirdan-Harris, the Administrative Judge of the Trial Division of the Court of Common Pleas, granted the Commonwealth's petition, thus assigning the matter to a three-judge panel. The issues to be decided by the Court of Common Pleas' *en banc* panel were as follows:

1. Does the usage of the term "operator" in PennDOT forms DL-26A and DL-26B violate any of a defendant's constitutional rights under the United States Constitution or the Pennsylvania Constitution, where the defendant's operation of a vehicle is an element of a charged offense that the Commonwealth must prove at trial?

2. If such usage of the term "operator" violates a defendant's constitutional rights, what is the appropriate remedy?

Order, filed 8/4/22.

The parties submitted briefs on the issues, and on January 10, 2023, the *en banc* panel issued its decision. Specifically, the panel relevantly held:

[T]he term "operator" in the "Signature of Operator" lines of PennDOT forms DL-26A and DL-26B[3] results in violations of a defendant's rights against self-incrimination under the Fifth Amendment to the United States Constitution and Article I,

---

[3] In this Commonwealth, the police are required to provide motorists arrested for DUI with warnings regarding the refusal of requested chemical testing. ***See Department of Transportation v. O'Connell***, 521 Pa. 242, 555 A.2d 873 (1989); 75 Pa.C.S.A. § 1547 (commonly referred to as the "Implied Consent Law"). These warnings are contained in PennDOT's DL-26A form (for breath testing) and DL-26B form (for blood testing). The DL-26B form is at issue in Appellant's case.

Further, in ***O'Connell***, our Supreme Court held that, when a motorist is asked to submit to chemical testing under the Implied Consent Law, the law enforcement officer making the request has a duty to explain to the motorist that the rights provided by the United States Supreme Court decision in ***Miranda*** are inapplicable to a request for chemical testing. ***O'Connell***, *supra*, 555 A.2d at 878.

Section 9 of the Pennsylvania Constitution, where the defendant's operation of a vehicle is an element of a charged offense that the Commonwealth must prove at trial. We further decide that the appropriate remedy is for the Commonwealth to be precluded at trial from using a defendant's signature on the form as proof of the defendant's operation of a vehicle. Neither the suppression of the entire DL-26 form nor the suppression of chemical testing results is an appropriate remedy for these violations. However, if the Commonwealth is permitted to introduce a DL-26 form as evidence at trial for a proper purpose, then the words "of Operator" in the "Signature of Operator" line must be redacted from the form.

Court of Common Pleas' *En Banc* Opinion, filed 1/10/23, at 3 (footnote added).

After the *en banc* panel rendered its opinion, the Honorable John R. Padova, Jr., of the Court of Common Pleas reversed the Municipal Court's order granting suppression in six cases, including Appellant's case, and remanded to the Municipal Court for further proceedings consistent with the *en banc* panel's decision.

Following a bench trial on March 3, 2023, the Municipal Court convicted Appellant of the offenses indicated *supra*, and on May 1, 2023, the Municipal Court sentenced Appellant to an aggregate of 90 days to five years in prison. Appellant filed a timely petition for a *writ of certiorari* with the Court of Common Pleas; however, the court denied the petition on July 25, 2023. This timely counseled appeal followed.[4]

---

[4] We note the Court of Common Pleas ordered Appellant to file a concise statement under Pa.R.A.P. 1925(b). Although Appellant asserts that he filed the required statement and attaches a copy to his brief, the certified docket entries contain no notation indicating that Appellant filed the concise
*(Footnote Continued Next Page)*

- 8 -

On appeal, Appellant sets forth the following issue in his "Statement of the Questions Involved" (verbatim):

> Did the common pleas court err in reversing the municipal court's suppression order and refusing to exclude the fruit of the poisonous tree after the Commonwealth violated [Appellant's] rights under the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

Appellant's Brief at 4.

On appeal, Appellant contends the Court of Common Pleas properly determined that, absent Appellant being provided with his ***Miranda*** rights, his signing of PennDOT form DL-26B as the "operator" of the pickup truck impermissibly induced him to incriminate himself in violation of the Fifth Amendment to the U.S. Constitution and Article I, Section 9 of the Pennsylvania Constitution, particularly since his operation of the pickup truck was an element of the charged offenses. However, he contends the Court of Common Pleas erred as it relates to the remedy for this constitutional violation.

---

statement with the lower court. We could remand this matter for the appointment of new counsel, a Rule 1925(b) statement *nunc pro tunc*, and a trial court opinion. ***See*** Pa.R.A.P. 1925(c)(3). However, on September 28, 2023, the Court of Common Pleas filed a Pa.R.A.P. 1925(a) opinion. Therein, the court indicated that it was relying on the Court of Common Pleas' *en banc* opinion as it relates to Appellant's appellate claim. Thus, we find it unnecessary to remand this matter and shall address the merits of Appellant's claim. ***See*** Pa.R.A.P. 1925(c)(3).

Specifically, he contends the Court of Common Pleas erred in holding as follows:

> The appropriate remedy is for the Commonwealth to be precluded at trial from using the defendant's signature on the form as proof of the defendant's operation of a vehicle. Neither suppression of the entire DL-26 form nor suppression of chemical testing results is an appropriate remedy. If the Commonwealth is permitted to introduce a DL-26 form as evidence at trial for a proper purpose, then the appropriate remedy would be for the words "of Operator" in the "Signature of Operator" line to be redacted from the form.

Court of Common Pleas' *En Banc* Opinion, filed 1/10/23, at 15.

Appellant suggests that the Municipal Court's initial remedy (suppression of all evidence derivative to or flowing from Appellant's signature of the DL-26B form as the driver) was appropriate. Accordingly, he contends the entire DL-26B form, as well as his blood test results, should have been suppressed as "fruit of the poisonous tree." Appellant's Brief at 14.

Appellant's argument, as phrased, questions what evidence a suppression court should suppress when a defendant signs a PennDOT DL-26B form as the "operator" absent the administering of **Miranda** warnings. Assuming, *arguendo*, as Appellant avers, the Court of Common Pleas properly held that Appellant's signing of PennDOT form DL-26B as "the operator" violated his constitutional rights against self-incrimination,[5] we disagree with

---

[5] Given the issues framed and the arguments presented in this Court, as well as our discussion *infra*, it is unnecessary for this Court to determine in the case *sub judice* whether the Court of Common Pleas properly held that, absent **Miranda** warnings, "[u]sage of the term 'operator' in PennDOT forms DL-26A

*(Footnote Continued Next Page)*

Appellant that the Court of Common Pleas fashioned an inappropriate remedy for this alleged constitutional violation.

Our standard and scope of review of suppression issues is well settled. We examine the specific findings of fact made by the suppression court and determine whether, based on the record developed in the suppression court, the factual findings are supported by the record. ***Commonwealth v. Batista***, 219 A.3d 1199, 1206 (Pa.Super. 2019). "If so, we are bound by those findings." ***Commonwealth v. Howard***, 762 A.2d 360, 361 (Pa.Super. 2000). Moreover, "[w]e are limited to considering only the evidence of the prevailing party, and so much of the evidence of the non-prevailing party as remains uncontradicted when read in the context of the record[.]" ***Batista***, 219 A.3d 1199 (quotation marks and quotation omitted). Regarding the suppression court's legal conclusions, our standard of review is *de novo*. ***Id.***

Recently, regarding the remedy for a ***Miranda*** violation, a panel of this Court held as follows:

> In ***United States v. Patane***, 542 U.S. 630 (2004), a plurality of the United States Supreme Court held that when a criminal defendant does not receive ***Miranda*** warnings during a

---

and DL-26B violates a defendant's rights against self-incrimination…where the defendant's operation of a vehicle is an element of a charged offense that the Commonwealth must prove at trial." Court of Common Pleas' *En Banc* Opinion, filed 1/10/23, at 10-11. However, since there are numerous words that could replace the word "operator" in the phrase "signature of operator" on the DL-26 forms, we suggest that PennDOT replace the word with one that is not an element of the charged offenses.

custodial interrogation, his custodial statement must be suppressed but not any physical evidence recovered as a result of the statement. Both our Supreme Court and this Court have followed **Patane**. **See Commonwealth v. Bishop**, [655 Pa. 270,] 217 A.3d 833, 835-36 (2019); **Commonwealth v. Abbas**, 862 A.2d 606, 611 (Pa.Super. 2004). The **Abbas** court observed, "Our reading of **Patane** indicates that the doctrine is not applicable to non-testimonial or derivative physical evidence absent an actual coerced statement, and the exclusion of Abbas' statement was a 'complete and sufficient remedy' for the **Miranda** violation." **Abbas**, 862 A.2d at 611.

[Subsequently, in Keys'] case, the trial court held that [the detective] gave defective **Miranda** warnings but held the police did not use any coercive tactics. Thus, under **Bishop** and **Abbas**, the proper remedy was the remedy selected by the trial court: suppression of [Keys'] custodial statement but no suppression of the contents of his cell phone, even if these contents were recovered as a result of his statement.

**Commonwealth v. Keys**, 287 A.3d 888, 2022 WL 13737416, at *4

(Pa.Super. filed 10/24/22) (unpublished memorandum).[6]

In the case *sub judice*, the Court of Common Pleas specifically applied

**Patane** and **Bishop**, and relevantly held as follows:

The statements made in violation of **Miranda** here are the implicit admissions by [Appellant] to having been [an] "operator" of [a] vehicle, communicated by [his] signature on the DL-26 form's "Signature of Operator" line. Accordingly, we hold that the appropriate remedy is to preclude the Commonwealth from using [Appellant's] signature as proof of [his] operation of [his] vehicle at trial.

[Appellant] suggest[s] that the entire DL-26 form should be suppressed. [The Court of Common Pleas] rejects such a remedy

_____

[6] **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). We find **Keys** to be persuasive in this matter.

as overbroad. The Commonwealth may in some cases have a proper purpose for seeking to admit the form [at trial]. The only part of a completed DL-26 form that communicates a defendant's self-incriminating statement is the part with the the [*sic*] defendant's signature on the "Signature of Operator" line. The only reasons the signature is self-incriminating is because of the form's usage of the term "operator" in the "Signature of Operator" line. Thus, in cases where the Commonwealth is permitted to introduce a DL-26 form as evidence at trial for a proper purpose, [the Court of Common Pleas] conclude[s] that an appropriate remedy would be for the words "of Operator" in the "Signature of Operator" line of the form to be redacted.

[The Court of Common Pleas] further hold[s] that the suppression of chemical test results is not an appropriate remedy to address the violations of a defendant's constitutional rights resulting from the usage of the term "operator" on the DL-26 forms. Preliminarily, [the court] notes that the chemical test results are not the fruit of a defendant's signature on the form, as [Appellant] claims. A defendant's signature on a DL-26 form affirms that the defendant has been advised of the warnings printed on the form and, as [the Court of Common Pleas] explains above, implicitly admits that the defendant operated a vehicle. The signature reflects neither consent nor refusal to submit to the chemical test of…blood. Indeed, the…DL-26B form explicitly state[s] that refusal to sign the form is not a refusal to submit to the chemical test. In short, a defendant's decision to submit to chemical testing does not flow or result from a defendant's act of signing on the "Signature of Operator" line of the DL-26 form.

Moreover, even if the chemical test results were in fact the fruit of a defendant's signature of a DL-26 form, which it is not, "'[t]he exclusion of unwarned statements…[would be] a complete and sufficient remedy' for any perceived **Miranda** violation." **Patane**, 542 U.S. [at] 641-42[.] Such a violation would not and "does not justify the exclusion of physical evidence recovered as a result of the statement." **Bishop**, [**supra**,] 217 A.3d at [836.] As explained by the United States Supreme Court:

> Although the text [of the Self-Incrimination Clause of the Fifth Amendment] does not delineate the ways in which a person might be made "a witness against himself," we have long held that the privilege does not protect a suspect from being compelled by the State to produce "real or physical evidence." Rather, the privilege "protects an accused only from being

compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature."

[*Pennsylvania*] *v. Muniz*, 496 U.S. [582,] 588-89 [(1990)]. Describing its prior holding in *Schmerber* [*v. California*, 384 U.S. 757 (1966)], which related specifically to the taking of a blood sample for a suspect in a DUI case, the [High] Court [in *Muniz*] further stated:

> In *Schmerber*, for example, we held that the police could compel a suspect to provide a blood sample in order to determine the physical makeup of his blood and thereby draw an inference about whether he was intoxicated. This compulsion was outside of the Fifth Amendment's protection, not simply because the evidence concerned the suspect's physical body, but rather because the evidence was obtained in a manner that did not entail any testimonial act on part of the suspect[.]

*Muniz*, 496 U.S. at 593[.]

Court of Common Pleas' *En Banc* Opinion, filed 1/10/23, at 11-14 (footnote and emphasis omitted) (citations and quotation omitted).

We find no abuse of discretion or error of law. We conclude the Court of Common Pleas properly applied *Patane* and its progeny. The exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation in this case. In *Patane*, the U.S. Supreme Court held that, while custodial statements should be suppressed, the suppression of a firearm was not warranted under a fruit of the poisonous tree analysis for the "mere failure to give *Miranda* warnings[.]" *Patane*, 542 U.S. at 643. In so holding, the Court indicated:

> [The] police do not violate a suspect's constitutional rights (or the *Miranda* rule) by negligent or even deliberate failures to

- 14 -

provide the suspect with the full panoply of warnings prescribed by *Miranda*. Potential violations occur, if at all, only upon the admission of unwarned statements into evidence at trial. And, at that point, the exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation.

Thus, unlike unreasonable searches under the Fourth Amendment or actual violations of the Due Process Clause or the Self-Incrimination Clause, there is, with respect to mere failures to warn, nothing to deter. There is therefore no reason to apply the fruit of the poisonous tree doctrine[.]

*Patane*, 542 U.S. at 641-42 (quotations, citations, and ellipsis omitted).

In the case *sub judice*, there is no indication that Appellant was given his *Miranda* warnings prior to signing the DL-24B form as "the operator." Thus, even assuming, *arguendo*, the form violates a defendant's constitutional rights against self-incrimination since it does not require *Miranda* warnings prior to a defendant signing the form indicating he/she was the "operator," we agree with the Court of Common Pleas that, at most, in the instant case, the Commonwealth was precluded from using Appellant's signature as the "operator" against him at trial.

We note that, to the extent Appellant contends his case is similar to *Commonwealth v. Lukach*, 649 Pa. 26, 195 A.3d 176 (2018), we disagree. In *Lukach*, our Supreme Court concluded the facts in *Lukach* were distinguishable from the scenario at issue in *Patane*. Specifically, in *Lukach*, the police did not simply fail to advise the defendant of his *Miranda* rights; but rather, the police impermissibly induced the defendant to speak in violation of his right to remain silent after he had unambiguously invoked that

right. This impermissible inducement rendered the defendant's subsequent confession involuntary and, thus, inadmissible. Further, our Supreme Court held "the derivative physical evidence recovered as a result of his confession was properly suppressed." *Lukach*, *supra*, 195 A.3d 193. The Court noted:

> [T]he High Court held [in **Patane** that] the taking of an un-**Mirandized** statement results in the statement's exclusion from evidence at trial, but there is no "deterrence-based argument" for suppressing the fruits of that statement. *Id.* at 642-43. The Court further recognized, however, that "exclusion of the physical fruit of actually coerced statements" **was** required. *Id.* at 644.
>
> ***
>
> [W]e make clear that, in circumstances where a suspect invokes his or her **Miranda** rights and an officer continues the interrogation, suppression of the statement alone is an inadequate remedy as it would allow officers to ignore a suspect's invocation in an attempt to secure physical evidence

*Lukach*, *supra*, 195 A.3d at 192-93 (bold in original). Accordingly, since the confession in *Lukach* was "actually coerced," our Supreme Court held the derivative physical evidence flowing from the confession should be suppressed.

However, unlike in *Lukach*, there is no evidence Appellant was advised of his *Miranda* rights or coerced into signing the DL-24B form. Thus, we find no error.

In any event, assuming, *arguendo*, the Court of Common Pleas erred in fashioning its remedy, we note that our further review of this case has been severely hampered. That is, we are unable to determine what evidence was

admitted at Appellant's trial before the Municipal Court, as well as whether any improperly admitted evidence was harmless error.

It is well-settled that, once this Court has concluded that admitted evidence should have been suppressed, it must determine beyond a reasonable doubt whether the error was harmless.[7]  Where the error is harmless, a new trial is not warranted.[8]

In the case *sub judice*, the certified record does not contain a transcript of the notes of testimony from Appellant's trial before the Municipal Court.[9] "In general, it is an appellant's burden to ensure that the certified record

---

[7] We note our Supreme Court has held that this Court may *sua sponte* invoke the harmless error doctrine since it "does nothing more than affirm a valid judgment of sentence on an alternative basis." **Commonwealth v. Hamlett**, 660 Pa. 379, 234 A.3d 486, 492 (2020) (quotation marks and quotation omitted).

[8] The harmless error doctrine reflects the reality that the accused is entitled to a fair trial, not a perfect trial. [Our Supreme Court has] described the proper analysis as follows:

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

**Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657, 671 (2014) (quotation marks and quotations omitted).

[9] We note that we made an informal inquiry to the lower court requesting the trial transcript; however, the lower court confirmed the notes of testimony from Appellant's trial were not transcribed.

- 17 -

contains the documents reflecting the facts needed for review."

***Commonwealth v. Wrecks***, 931 A2d 717, 722 (Pa.Super. 2007).

> With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P.1911(a)….When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. [***Commonwealth v.***] ***Williams***, 552 Pa. 451, 715 A.2d [1101,] 1105 [(1998)]. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts. ***Id.***

***Commonwealth v. Preston***, 904 A.2d 1, 7-8 (Pa.Super. 2006) (*en banc*).

We see no indication in the certified record that Appellant ordered the notes of testimony from his trial. Accordingly, since we cannot determine whether evidence was improperly admitted at Appellant's trial and/or whether there was harmless error, Appellant is not entitled to relief on this basis, as well.

For all of the foregoing reasons, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2024