J-A13010-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DAVID JACK RITCHEY, JR. :
:
Appellant : No. 1328 WDA 2024

Appeal from the PCRA Order Entered October 11, 2024
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0001404-2020

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED: May 30, 2025**

David Jack Ritchey, Jr., appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

By way of background, on August 25, 2020, Shawn O'Rourke informed Detective Aldo Legge of the Center Township Police Department that Appellant was looking to sell stolen firearms. The police orchestrated a controlled purchase whereby Appellant picked up O'Rourke in his vehicle to meet the undercover detective in a parking lot while other officers surveilled the area. At the ensuing transaction, Appellant put on gloves, told the undercover detective that he had a rifle and revolver for sale, opened the trunk of his vehicle to display a partially exposed AR-15 semi-automatic rifle, and then pulled a loaded .38 caliber revolver from his waistband. Appellant requested $1,000 for both guns. As Detective Legge removed cash from his pocket to

complete the sale, he signaled his fellow officers to initiate Appellant's arrest. When the officers converged around Appellant in marked police vehicles, Appellant threw the handgun into the trunk and slammed it shut.[1] During a search incident to arrest of Appellant's car and person, police uncovered drug paraphernalia in addition to the subject firearms, which were both operable and reported as stolen.

Based on the aforementioned events, Appellant was arrested and charged with a bevy of offenses, including several related to the possession and sale of firearms.[2] Appellant initially retained Attorney Steven Valsamidis, Esquire, but terminated that relationship and retained Gerald Benyo, Esquire, to represent him before and during trial. Neither attorney filed pre-trial motions.

At the subsequent jury trial, multiple officers, including Detective Legge, testified to the above facts. Appellant took the stand in his defense. In his version of events, he claimed that O'Rourke owed him money, so he agreed to take O'Rourke to sell some unknown items to a third party. When Appellant picked him up, he attested that O'Rourke placed the firearms in the trunk of his car. Appellant averred that he put gloves on because he did not want

---

[1] One of the arresting officers' dash cameras recorded their arrival. It captured the moment where Appellant threw the revolver into the trunk.

[2] The Commonwealth later amended the criminal information to change the six firearm offenses to attempt offenses.

- 2 -

anything to do with the transaction. He conceded, however, that he continued to drive O'Rourke to the sale despite knowing that there were guns in his car.

Although Appellant desired to call O'Rourke as a defense witness at trial, Attorney Benyo did not believe it would be in the best interest of Appellant since O'Rourke would contradict Appellant's testimony. Nevertheless, before trial, Attorney Benyo placed his unsuccessful efforts to locate O'Rourke on the record, including hiring multiple detectives. Attorney Benyo also stated that at one point, he had a phone call with O'Rourke and Appellant's father where O'Rourke expressed that he would not be willing to testify. Additionally, the Commonwealth had sought O'Rourke as a witness for its case-in-chief, but likewise failed to locate him despite his having multiple active arrest warrants.

The jury convicted Appellant of all charges, and the trial court sentenced him to eleven and one-half to twenty-seven years of imprisonment. The trial court denied Appellant's post-sentence motions, he timely appealed, and this Court affirmed his judgment of sentence. **See Commonwealth v. Ritchey**, 299 A.3d 878, 2023 WL 3270885 (Pa.Super. 2023) (non-precedential decision).

The instant timely petition followed, which Appellant amended several times with leave of court. Attorney Christopher Lacich, Esquire, represented Appellant through post-sentence motions, direct appeal, and the PCRA proceeding. Relevantly, Appellant asserted that both Attorneys Valsimidis and Benyo provided ineffective assistance of counsel. Appellant claimed that

Attorney Valsimidis neglected to, *inter alia*, file a pre-trial motion to suppress and conduct pre-trial investigations. Appellant asserted the same claims against Attorney Benyo, along with accusations that he failed to obtain O'Rourke as a witness, lied to the court about his efforts to locate him, and declined to cross-examine the Commonwealth's witnesses about whether O'Rourke had been searched for firearms prior to the undercover sale. Additionally, although both attorneys had previously represented O'Rourke in unrelated cases, Appellant claimed that neither attorney properly informed him of that representation, which created conflicts of interest. The PCRA court held a three-day hearing, wherein Attorneys Valsimidis and Benyo, Appellant, his father, and O'Rourke testified.

Attorney Valsimidis confirmed his decision to forgo pre-trial motions. He explained that he did not believe it was prudent to submit a motion to suppress in light of a letter Appellant had written to him, wherein Appellant conceded that he carried a handgun in his waistband during the undercover sale and he and O'Rourke had stolen both firearms. The letter also served as a basis for Attorney Valsimidis's decision not to hire a private investigator. Attorney Valsimidis rather believed that questioning the Commonwealth's investigation in front of the jury would give him the best opportunity to attack the credibility of its case.

Attorney Benyo likewise testified to his belief that pre-trial motions would have been futile. He believed that there was no need to hire a private

investigator or request fingerprints since he was aware that Appellant had carried a firearm in his waistband, had another in his trunk, and wore gloves during the controlled sale. Attorney Benyo also explained that he did not question the Commonwealth's witnesses about whether O'Rourke had been searched prior to the undercover transaction because he did not believe it would have contradicted the facts establishing Appellant's possession of the firearms. He further maintained that calling O'Rourke as a witness would not have been in Appellant's best interests because O'Rourke would have refuted Appellant's testimony. Even so, Attorney Benyo detailed his efforts to locate O'Rourke based on Appellant's desire to have him testify. However, he could not recall whether he had a phone call with Appellant's father and O'Rourke. Attorney Benyo lastly explained that he had informed Appellant and his father about his prior representation of O'Rourke during one of their first meetings. He attested that he represented O'Rourke in unrelated matters, which concluded years before Appellant's case.

During Appellant's testimony, he generally expressed disdain with Attorneys Valsimidis and Benyo's representation. Appellant's narration of the events of the day in question had also shifted from his trial testimony. Specifically, he claimed that he was too high to remember that day, but in any case, O'Rourke placed the guns in his car without his knowledge. At the conclusion of his testimony, the PCRA court, who also presided over his jury

trial, questioned Appellant on his inconsistent statements using the notes of testimony from the jury trial as a reference.

O'Rourke was the last to testify.[3]  He claimed that Attorney Benyo never contacted him, and he was never on a phone call with him and Appellant's father.[4]  O'Rourke also stated that he was available to testify at the jury trial. Although he claimed that the Commonwealth knew where to find him, he attested that he typically used burner phones, and his phone number was not available to just anyone.  When questioned as to how Appellant came to possess the firearms, he invoked the Fifth Amendment.  O'Rourke otherwise confirmed that if he had been called to testify at the jury trial, his story would have largely reflected what was in his handwritten Informant Conditions Statement.  Therein, he had asserted that Appellant called him asking whether he knew of anyone willing to buy firearms, O'Rourke contacted Detective Legge, they arranged the controlled buy, and Appellant had the guns on his person and in his trunk when he picked up O'Rourke.

_____

[3] During the first two days of hearings, Appellant could not secure O'Rourke's appearance.  The PCRA court closed the record at the conclusion of the second day.  However, after Appellant obtained information that O'Rourke was available to testify and located in the Allegheny County Jail, the court agreed to re-open the record to allow his testimony.

[4] Appellant's father also declared that he was never on a call with both Attorney Benyo and O'Rourke, and he would not have hired him for Appellant if they were aware that he had previously represented O'Rourke.

The PCRA court took the matter under advisement, and by opinion and order denied Appellant's petition. Appellant timely appealed. The court did not order Appellant to file a statement pursuant to Pa.R.A.P. 1925(b), and none was filed. In lieu of a Rule 1925(a) opinion, the court directed us to its previous opinion and order. On appeal, Appellant presents the following issues for our determination:

I) Whether the PCRA court abused its discretion and erred for not finding, to-wit:

(A) Ineffective assistance of pre[-]trial counsel Valsamidis and Benyo for failing to file necessary pre[-]trial motions such as for dismissal and for suppression and to conduct necessary pre-trial interview/investigation?

(B) Ineffective assistance of pre[-]trial/trial counsel Benyo for the entire proceedings were tainted when said counsel failed to reveal a prior professional relationship with [O'Rourke], his representation contingent on the same?

(C) Ineffective assistance of trial counsel Benyo for material misrepresentations made to the court and Appellant in open court concerning a call with [O'Rourke,] which two witnesses at the PCRA hearing said did not occur as well concerning the hiring of a private investigator?

(D) Ineffective assistance of trial counsel Benyo for failure to subpoena [O'Rourke] for trial?

(E) Ineffective assistance of trial counsel Benyo for failure at trial to cross-examine the Commonwealth's witnesses as to the fact that the "sting" was not a "controlled buy"?

II) Whether the PCRA court abused its discretion and committed error when it introduced facts during the PCRA hearing on April 12, 2024, by asking questions of the Appellant from pre-marked sections of the Appellant's trial transcript?

Appellant's brief at 30-32 (some capitalization altered).

We begin with an overview of the pertinent legal principles. This Court reviews "an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). The appellant has the burden "to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up). We afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Commonwealth v. Smith*, 194 A.3d 126, 132 (Pa.Super. 2018) (cleaned up). However, we review the court's legal conclusions *de novo*, and our scope of review is plenary. *Id*.

Appellant's first five issues challenge the effectiveness of his attorneys, for which our law is well-settled:

> Counsel is presumed to be effective and it is a petitioner's burden to overcome this presumption by a preponderance of the evidence. To succeed on a claim of ineffective assistance of counsel, a petitioner must establish three criteria: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis for his or her action or inaction; and (3) that petitioner was prejudiced as a result of the complained-of action or inaction. The failure to satisfy any one of these criteria is fatal to the claim.

*Commonwealth v. Thomas*, 323 A.3d 611, 620-21 (Pa. 2024) (cleaned up).

Counsel cannot be found to be ineffective "for failing to raise a meritless claim." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (cleaned up). As to whether an attorney had a reasonable basis for a decision

- 8 -

or strategy, "a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id*. To establish prejudice, the petitioner must prove that "there is a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." *Commonwealth v. Alceus*, 315 A.3d 853, 859 (Pa.Super. 2024) (cleaned up).

In his first claim, Appellant argues that neither attorney had a "competent strategy" in declining to file pre-trial motions or conducting pre-trial investigations. *See* Appellant's brief at 38. He maintains that they should have attacked the Commonwealth's case at every possible stage. *Id*. Appellant asserts that the failure to inspect his defense more thoroughly, such as by hiring a private investigator or conducting forensic testing "to get to the root of the case and try and establish the true facts[,]" amounted to ineffective assistance of counsel. *Id*. at 42.

The PCRA court concluded that Appellant did not prove that Attorneys Valsimidis and Benyo lacked reasonable bases for their strategies. The court explained that both attorneys believed that filing a motion to suppress would not have been as impactful as challenging the Commonwealth's investigation in front of the jury to support Appellant's theory that he had been set up. *See* PCRA Court Opinion, 10/11/24, at 23-24, 26. Attorney Valsimidis testified that he did not hire a private investigator because "he knew that doing so would reveal [Appellant]'s involvement in other criminal acts outside of this

prosecution." *Id*. at 24. Attorney Benyo expressed that it would not have been prudent to order forensic testing because Appellant wore gloves during the controlled buy. The court elucidated that "[i]n other words, it was more effective and less risky to [Appellant]'s case to point out that the Commonwealth had failed to conduct forensic testing of the firearms as part of Attorney Benyo's trial strategy to undermine the Commonwealth's investigation in this case." *Id*. at 26.

The court's determination is supported by the record. Attorneys Valsimidis and Benyo offered sensible explanations for their decisions. *See* N.T. PCRA Hearing, 3/19/24, at 13-14, 22, 40, 55-56, 125-26, 128-31, 164-66, 170-71. Appellant's brief is devoid of argument purporting to demonstrate how his proposed alternatives would have offered him substantially greater potential for success. Appellant points to no additional evidence that could have been uncovered, and fails to explain how seeking to have evidence excluded before trial would have been a better course of action. *See Johnson*, 139 A.3d at 1272. Instead, Appellant's proposed alternatives may have been detrimental to his case. Accordingly, we agree with the trial court that both attorneys had reasonable bases for their decisions, and this claim fails.

Appellant next contends that because Attorney Benyo represented O'Rourke in a previous case, he had a conflict of interest that tainted the entire trial. *See* Appellant's brief at 44. He argues that he hired Attorney Benyo

"contingent on" having no connection to O'Rourke, and he would have never retained him had he known about this relationship. *Id*. at 45. This alleged conflict of interest, Appellant claims, "may serve as an explanation [as] to why [he] never fully pursued to whereabouts [*sic*] of O'Rourke and/or secured his presence at trial via subpoena[.]" *Id*. at 46-47.

The PCRA court found that Appellant's argument was meritless. The court explained that Attorney Benyo did not represent O'Rourke and Appellant at the same time. *See* PCRA Court Opinion, 10/11/24, at 30. Rather, Attorney Benyo represented O'Rourke in a guilty plea to conspiracy to commit burglary and parole violation proceedings in 2017, 2018, and 2020. *Id*. The court also noted that Attorney Benyo credibly testified that he informed Appellant of this prior relationship "at one of [their] first meetings[.]" *Id*. Thus, the court concluded that Appellant had "shown no evidence that Attorney Benyo did not call [O'Rourke] or other potential witnesses based on his alleged conflict of interest[.]" *Id*. at 32.

We agree with the PCRA court. A conflict of interest exists where "(1) counsel actively represented conflicting interests; and (2) those conflicting interests adversely affected his lawyer's performance." *Commonwealth v. Fortune*, 302 A.3d 780, 789 (Pa.Super. 2023). Where a case "involves successive and not dual representation, [an a]ppellant must demonstrate that he was prejudiced by any potential conflict of interest." *Commonwealth v. Tharp*, 101 A.3d 736, 754 (Pa. 2014).

As Attorney Benyo credibly testified, he represented O'Rourke in unrelated matters that concluded years prior to Appellant's case, and he had informed Appellant of this relationship. *See* N.T. PCRA Hearing, 3/19/24, at 102-13. Appellant has not demonstrated that Attorney Benyo's successive representation adversely affected his performance. *See Tharp*, 101 A.3d at 754. Contrarily, the record bears out that despite Attorney Benyo's endeavors, neither he nor the Commonwealth could locate O'Rourke. Hence, no relief is due.

We address together Appellant's next two issues concerning Attorney Benyo's efforts to locate O'Rourke. Appellant maintains that Attorney Benyo generally provided ineffective assistance for failing to secure O'Rourke as a witness. To substantiate his claim, Appellant relies upon O'Rourke's attestation that he was available and willing to testify at the jury trial. *See* Appellant's brief at 54. Appellant avers that if O'Rourke had testified, "it is very possible that [Appellant] could very well have been acquitted." *Id*. at 55. Appellant also contends that Attorney Benyo lied about having had a phone call with O'Rourke and Appellant's father, both of whom denied the communication ever occurred. *Id*. at 49.

The PCRA court determined both that the claim lacked arguable merit, and that Appellant was not prejudiced by counsel's failure to call O'Rourke as a defense witness. First, the court explained that "review of the record shows that [O'Rourke] was unavailable to testify for both parties at the time of trial"

- 12 -

since neither Attorney Benyo nor the Commonwealth could locate him. *See* Trial Court Opinion, 10/11/24, at 36. Thus, it found O'Rourke's statement that he was available for trial to be incredible. *Id*. at 38. The court further noted that even if Attorney Benyo had secured O'Rourke as a witness, his testimony would have likely contradicted Appellant's story. *Id*. at 38-39. Ultimately, the court concluded that it "need not reach the question of whether Attorney Benyo had a conversation with [O'Rourke] . . . to decide [Appellant]'s claim" because had Attorney Benyo secured O'Rourke as a witness, it would not have assisted Appellant's case. *Id*. at 41.

The record supports the court's determination. In order to demonstrate that counsel was ineffective for failing to call a witness, the petitioner must prove that "(1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of, the witness; (4) the witness was willing to testify; and (5) the absence of testimony was so prejudicial as to deny the petitioner a fair trial." *Commonwealth v. Thomas*, 323 A.3d 611, 625 (Pa. 2024).

The PCRA court specifically discredited O'Rourke's claim that he was available as witness because neither Attorney Benyo nor the Commonwealth could find him. O'Rourke also stated that at trial he would have testified consistently with his written Confidential Informant Statement, which solidified that Appellant possessed the firearms. *See* N.T. PCRA Hearing, 7/30/24, at 31-32. Had O'Rourke served as a witness, it is not likely that the

- 13 -

outcome of the case would have been different. Accordingly, Appellant has not established prejudice.

In his last claim of ineffective assistance, Appellant contends that Attorney Benyo neglected to question the Commonwealth's witnesses about whether O'Rourke had been searched prior to the undercover sale. *See* Appellant's brief at 58. Appellant maintains that this omission "eliminated an avenue of reasonable doubt." *Id*. at 59.

The court once again found that Appellant did not demonstrate prejudice. Specifically, it determined "[t]here was no need to search O'Rourke prior to the sale because he merely facilitated the sale between [Appellant] and Detective Legge." *See* Trial Court Opinion, 10/11/24, at 45. The court cited ample evidence demonstrating that Appellant possessed the firearms used in the undercover transaction, and a search of O'Rourke would not have negated those facts. *Id*. at 46. Concisely, the court did not find it plausible that the outcome of the trial would have been different had Attorney Benyo asked witnesses whether O'Rourke had been searched. *Id*.

The court's analysis is apt. As previously recounted, the testimony at the jury trial evidenced that Appellant had a revolver in his waistband, traveled to the sale site with a rifle in the trunk, discussed a purchase price, opened his trunk, and revealed the rifle to Detective Legge. *See Ritchey*, 2023 WL 3270885, at *6. Although Appellant testified to a different version of events, the jury did not credit his story. Asking the Commonwealth's witnesses

whether they searched O'Rourke prior to the transaction would not have rebuked the facts establishing Appellant's possession of the firearms. Thus, there is not a reasonable probability that Appellant would not have been convicted but for Attorney Benyo's omission.

Finally, Appellant contends that the PCRA court improperly asked him questions during the hearing about the testimony he presented at trial. This Court reviews the admissibility of evidence for an abuse of discretion. *See Commonwealth v. Elliott*, 80 A.3d 415, 446 (Pa. 2013). Importantly, we reiterate that in PCRA proceedings, the burden is on Appellant as the petitioner to demonstrate that he is entitled to relief by a preponderance of the evidence. *See* 42 Pa.C.S. § 9543(a). One of the primary purposes of a PCRA evidentiary hearing is to allow the court to determine the credibility of witnesses. *See Commonwealth v. Flor*, 259 A.3d 891, 910-11 (Pa. 2021). We further note that "[g]enerally, it is deemed preferable for the same judge who presided at trial to preside over the post-conviction proceedings since familiarity with the case will likely assist the proper administration of justice." *Commonwealth v. Martorano*, 89 A.3d 301, 307 (Pa.Super. 2014) (cleaned up).

Appellant assails the PCRA court's use of the notes of testimony of the jury trial to inquire about his inconsistent statements and claims that, in doing so, the court did not act impartially. *See* Appellant's brief at 64. Appellant asserts that this line of questioning "took place after Appellant had been examined by both counsels, and the inquiry from the court was not based on

- 15 -

the natural progression of the pr[e]ceeding questions, but rather appeared to be pre-planned and prepared in advance." *Id*. By using the transcripts, Appellant alleges that the PCRA court "introduced facts that were not in evidence." *Id*.

We discern no abuse of discretion. Appellant bore the burden to prove to the PCRA court that he was entitled to relief. The judge at the PCRA hearing was the same one who presided over his jury trial, and was thus familiar with Appellant's story. It is beyond peradventure that the PCRA court would be authorized to review the trial transcripts after the PCRA hearing to address Appellant's claims. *See Commonwealth v. Stauffenberg*, 318 A.3d 399, 410 (Pa.Super. 2024) (noting that it is an "it is an appellant's burden to ensure that the certified record contains the documents reflecting the facts needed for review[,]" including the notes of testimony of trial). Therefore, it was not an abuse of discretion for the court to utilize the notes of testimony during the hearing for the same purpose. Appellant's argument to the contrary is meritless.

Overall, Appellant has not demonstrated that he is entitled to relief where counsel did not provide ineffective assistance, and the PCRA court did not abuse its discretion. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/30/2025